IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

SEP -8 2015

CLERK_____
SO. DIST. OF GA

AMERIS BANK,                    )
                               )
    Plaintiff and Counter-     )
    Defendant,                 )
                               )
v.                             )      CASE NO. CV414-038
                               )
G. GLEN MARTIN and ARTHUR G.   )
SCANLAN,                       )
                               )
    Defendants and Counter-    )
    Plaintiffs.                )
_____)

## O R D E R

Before the Court is Plaintiff's Motion for Summary
Judgment (Doc. 23), to which Defendants have filed a
response (Doc. 31). Plaintiff has also filed a reply in
which it moves to strike portions of affidavits filed by
Defendants. (Doc. 36.) In addition, Defendants have filed a
Motion to Stay (Doc. 27), to which Plaintiff has filed a
response (Doc. 30). For the following reasons, Defendants'
Motion to Stay is **DENIED** and Plaintiff's Motion for Summary
Judgment is **GRANTED.** Defendants have failed to show any
genuine issue of material fact to sustain their
counterclaims or defeat Plaintiff's claim for payment
pursuant to the loan guaranties. Accordingly, Plaintiff is
**DIRECTED** to file, within thirty days, an affidavit
outlining the total amount, costs, and any accrued interest

to which Plaintiff believes it is entitled. Defendants shall have twenty days to respond.

## BACKGROUND

On July 18, 2008, Sterling Bluff Investors, LLC ("SBI") executed a promissory note in favor of Coastal Bank in the amount of $6,250,000.00.[1] (Doc. 32 at 1.) SBI acquired this loan for the purpose of purchasing land lots in a Bryan County, Georgia subdivision as well as resident memberships in the subdivision's property owner's club—the Ford Plantation Club. (Id. at 1-2.) SBI used the loan proceeds to purchase sixty-three lots and fifty club memberships (the "Collateral Property") and ultimately acquired a total of seventy-two lots with corresponding club memberships. (Doc. 24 ¶¶ 5, 7.)

Defendants Martin and Scanlan—both Louisiana residents and passive investors in SBI's enterprise—each executed limited guaranties partially securing SBI's indebtedness to Coastal Bank. (Id. ¶¶ 4, 8-11.) Specifically, Defendant Martin's guaranty limits his liability to "$1,562,500.00 of principal, accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements

---

[1] For the purposes of ruling on Ameris Bank's Motion for Summary Judgment, the Court construes the facts in the light most favorable to Defendants. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

evidencing the [i]ndebtedness and securing payment of the [i]ndebtedness." (Id. ¶ 10.) Defendant Scanlan's guaranty limits his liability to $1,000,000.00 on these same terms. (Id. ¶ 12.) In 2011, the loan was renewed and the Defendants signed a loan commitment letter for the renewal. (Doc. 32 at 2.) At the time of the loan's renewal, Coastal Bank neither provided an appraisal of the Collateral Property nor advised Defendants that the Collateral Property may have lost value. Id.

SBI's former managing member, Kethesparan Srikanthan, exclusively handled negotiations for the original loan and its subsequent renewal. (Doc. 24 ¶ 3.) However, Mr. Srikanthan's relationship with the Ford Plantation Club's board of directors eventually deteriorated and Defendant Martin took over as managing member of SBI in April 2012. (Id. ¶ 26.) Despite the change, however, SBI defaulted on its loan payment obligations to Coastal Bank in March 2013. Although Coastal Bank forbore payment on the loan for approximately the next nine months, SBI was ultimately unsuccessful in obtaining new capital and failed to cure the default. (Id. ¶¶ 30-31.) As a result, Coastal Bank initiated proceedings to sell the Collateral Property at foreclosure, but SBI filed for bankruptcy before any sale could take place. Id. On August 22, 2014, SBI's bankruptcy case was dismissed. (Doc. 27, Attach. 6.)

In April 2013, shortly after SBI went into default on its loan obligations, Coastal Bank's Chief Operating Officer, G. Michael Odom, Jr., became a member of the Ford Plantation Club. (Doc. 32 at 2.) Thereafter, Mr. Odom attended breakfast meetings with other members of the Ford Plantation Club to discuss club business. (Id. at 3.) In August 2013, Mr. Odom offered to sell the Collateral Property to Michael Sekara for $3,500,000.00, but the offer was turned down.[2] Id.

On February 28, 2014, Coastal Bank filed the instant action against Defendants seeking to collect amounts allegedly due pursuant to Defendants' respective personal guaranties of SBI's promissory note. (Doc. 1.) Defendants answered and counterclaimed for breach of fiduciary duties, negligence, breach of contract, breach of the covenant of good faith and fair dealing, breach of duty to guarantors, economic duress, fraud, tortious interference with contractual relations, tortious interference with business relations, and defamation. (Doc. 10.) On June 30, 2014, Ameris Bank acquired all assets of, and merged with,

---

[2] Defendants also claim that Coastal Bank later had an agreement to sell the Collateral Property to Ford Plantation Club Member Ralph Eagle. (Doc. 32 at 3.) However, Defendants' assertion regarding this deal is based entirely on inadmissible hearsay. See Fed. R. Civ. Pro. 56(c)(4). Accordingly, the Court will not consider this factual allegation in its analysis.

Coastal Bank.[3] (Doc. 25 at 1.) Thereafter, on August 1, 2014, Ameris Bank replaced Coastal Bank as Plaintiff in this case. (Doc. 17.) On December 2, 2014, Ameris Bank advertised and sold the Collateral Property at a public foreclosure sale in Bryan County, Georgia. (Doc. 24 ¶ 39.) Ameris Bank was the highest bidder at the foreclosure sale and purchased the Collateral Property for $3,800,000.00. Id. On December 23, 2014, Ameris Bank filed a Report of Foreclosure Sale and Application for Confirmation in the Superior Court of Bryan County, Georgia seeking to confirm that the sale of the Collateral Property equaled or exceeded its true market value. (Doc. 30 at 1.) However, Ameris Bank has requested that the Superior Court stay that action pending the outcome of this litigation. (Doc. 36, Attach. 1.)

On February 3, 2015, Plaintiff filed its Motion for Summary Judgment. (Doc. 23.) Two days later, on February 5, 2015, Defendant filed its Motion to Stay. (Doc. 27.) The Court now addresses both motions.

---

[3] Although they do not argue the issue with any specificity, Defendants passively suggest throughout their filings that the merger between Ameris Bank and Coastal Bank was actually a disguised sale of the promissory note and the Collateral Property in violation of SBI's right-of-first-refusal. However, Defendants have failed to offer any evidence or legal support to substantiate this assertion. Accordingly, the Court will not address this issue.

**ANALYSIS**

I.  <u>MOTION TO STAY</u>

Defendants argue in their Motion to Stay that the Court should stay this action in light of proceedings in the Superior Court of Bryan County to determine whether the Collateral Property was sold at or above fair market value. (Doc. 28.) According to Defendants, the outcome of this state action will have a direct impact on the measure of damages in this case, and thus a stay is appropriate. (<u>Id.</u> at 3.) In response, Plaintiff argues that Defendants' motion should be denied because the stay requested is for an indefinite duration and because the terms of Defendants' personal guaranties demonstrate that confirmation of the foreclosure sale is not necessary. (Doc. 30.)

In support of its argument concerning the personal guaranties, Plaintiff points to two recent decisions by the Georgia Court of Appeals holding that confirmation of a foreclosure sale is unneeded where a defendant has waived such a requirement in his or her personal guaranty. In both <u>HWA Props., Inc. v. Cmty. & S. Bank</u>, 322 Ga. App. 877, 887, 746 S.E.2d 609, 617 (2013) and <u>Cmty. & S. Bank v. DCB Invs., LLC,</u> 328 Ga. App. 605, 613-14, 760 S.E.2d 210, 216 (2014), the Georgia Court of Appeals held that a lender's failure to obtain confirmation of a foreclosure sale did

not affect a guarantor's liability because the guaranties in question included express and comprehensive waivers of any all defenses to liability. According to Plaintiff, the personal guaranties executed by Defendants Martin and Scanlan are operatively identical to those in HWA and Community.

After a review of the personal guaranties in this case, the Court agrees with Plaintiff. Both Defendant Martin's and Scanlan's personal guaranties state that they "waive[] any and all defenses, claims and discharges of [SBI], or any other obligor, pertaining to the [i]ndebtedness, except the defense of discharge by payment in full." (Doc. 24, Attach. 1 at 29, 32.) In addition, both guaranties include language identical to that which the Georgia Court of Appeals found determinative in HWA. Specifically, the guaranties in this case state that Defendants Martin and Scanlan shall remain liable for any deficiency remaining after foreclosure of the Collateral Property, regardless of "whether or not the liability of [SBI] or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. [Defendants] shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though [SBI's]

obligations had not been discharged." (Id., Attach. 1 at 29, 32.)

Based on this language, the Court concludes that a judicial confirmation of the foreclosure sale is not required for Ameris Bank to seek payment pursuant to Defendants' personal guaranties. In similarity to the guaranties in HWA, the guaranties in this case waive all defenses to liability even if a court ultimately discharges some or all of SBI's indebtedness. As a result, even if the Superior Court of Bryan County, Georgia found that the foreclosure sale price of the Collateral Property was too low, any resulting discharge of SBI's liability would have no effect on Defendants' liability. Quite simply, the Court can discern no reason why the terms of the parties' contracts should not be given their plain operative effect. Because the foreclosure confirmation proceedings would have no impact on the case at hand, Defendants' Motion to Stay must be denied.[4]

---

[4] Defendants repeat in their response to Plaintiff's Motion for Summary Judgment this same argument that a claim for payment on the guaranties is premature given the pending confirmation proceedings in the Superior Court of Bryan County, Georgia. (Doc. 32 at 19.) For the same reasons that Defendants' Motion to Stay is denied, however, the Court finds this argument unavailing. Accordingly, the Court need not address this issue with respect to Plaintiff's motion for summary judgment.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears
> the initial responsibility of informing the
> district court of the basis for its motion and
> identifying those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the affidavits,
> if any, which it believes demonstrate the absence
> of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

B. <u>Plaintiff's Claim for Payment on the Guaranties</u>

Under Georgia law, it is well settled that " '[a] plaintiff seeking to enforce a promissory note establishes a prima facie case by producing the note and showing that it was executed. Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense.' " <u>Collins v. Regions Bank</u>, 282 Ga. App. 725, 726, 639 S.E.2d 626, 627 (2006) (<u>quoting</u> <u>Stewart v. Johnson</u>, 269 Ga. App. 698, 699, 605 S.E.2d 111, 113 (2004)). Here, Defendants admit that the guaranties were executed. (Doc. 33 ¶¶ 8-11.) Furthermore, the parties do not dispute that SBI defaulted in payment on the promissory note or that Defendants Martin and Scanlan are indebted to Plaintiff pursuant to their personal guaranties. (Doc. 33 ¶¶ 35, 42, 44.) Accordingly, the Court finds that Plaintiff has established a prima facie case for enforcement of Defendants' personal guaranties.

Defendants contend that, despite the duly executed personal guaranties, they have alleged facts sufficient to sustain an affirmative defense against Plaintiff's right to payment. Specifically, Defendants allege that Mr. Odom's offers to sell the Collateral Property to third-parties

constituted an impairment of the Collateral Property.[5] (Doc. 32 at 5.) Based on this alleged impairment, Defendants argue that their liabilities under the guaranties should be discharged. See O.C.G.A. § 10-7-22 ("Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk or exposes him to greater liability shall discharge him.").

Plaintiff argues that the Court need not entertain Defendants' alleged affirmative defense because Defendants prospectively waived their rights to assert such defenses in the guaranties themselves. (Doc. 25 at 8.) As stated before, the guaranties state that Defendants "waive[] any and all defenses, claims and discharges of [SBI], or any other obligor, pertaining to the [i]ndebtedness, except the defense of discharge by payment in full." (Doc. 24, Attach. 1 at 29, 32.) In addition, the guaranties go on to state

---

[5] Defendants asserted twenty-six affirmative defenses in their answer to the complaint. (Doc. 10.) In their response, however, Defendants limit their arguments only to the defense of impairment of collateral. Accordingly, the Court need not consider Defendants' other alleged affirmative defenses. See Big Sandy P'ship v. Branch Banking & Trust Co., 313 Ga. App. 871, 872, 723 S.E.2d 82, 84 (2012) ("Debtors [are] not entitled to rest on allegations in their pleadings to establish affirmative defenses on which they had the burden of proof at trial, but [are] required to come forward with or point to specific facts in the record to establish affirmative defenses."). Accordingly, the Court need not address Defendants' twenty-five other, apparently abandoned, affirmative defenses.

that Defendants "will not assert, plead or enforce against [Plaintiff] any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to [SBI] or any other person liable in respect of any [i]ndebtedness . . . ." Id. In response, Defendants contend these waivers do not preclude their defense of impairment of collateral because Mr. Odom's actions are simply too egregious to fall within the scope of the waivers and that enforcement of the waivers would be against public policy. (Doc. 32 at 7.)

Georgia courts have consistently held that where no ambiguity in a contract appears, the contract shall be enforced according to its terms "irrespective of all technical or arbitrary rules of construction." Duffett v. E & W Props., Inc., 208 Ga. App. 484, 486, 430 S.E.2d 858, 859 (1993). Put more simply, "where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." Id. "Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract . . . unless prohibited by statute or public policy." Simmons v. Select Ins. Co., 183 Ga. App. 128, 129, 358 S.E.2d 288, 290 (1987) Furthermore, guarantors are free

to prospectively waive defenses to creditor claims and even give up statutory protections if they so desire. Underwood v. NationsBanc Real Estate Serv., Inc., 221 Ga. App. 351, 353, 471 S.E.2d 291, 293 (1996). As such, "creditors are entitled to summary judgment in a suit on an unconditional guaranty when the guarantor has waived all of his defenses." Core LaVista, LLC v. Cumming, 308 Ga. App. 791, 795, 709 S.E.2d 336, 340-41 (2011).

Here, the guaranties in question expressly waive any and all defenses Defendants may have other than discharge of payment in full, and explicitly state that Defendants will not assert defenses of unenforceability. (Doc. 24, Attach. 1 at 29, 32.) Despite the admittedly broad nature of the waiver provisions, Defendants nonetheless maintain that Mr. Odom's alleged impairment of the Collateral Property falls outside the scope of this protection. However, the Court notes that the guaranties also include the following language:

> The liability of the Undersigned shall not be affected or impaired by an of the following acts (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): . . . any

release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security.

(Id., Attach. 1 at 29, 31.) Far from being outside the scope of the agreement, as Defendants contend, the Court finds that the guaranties also expressly allow for impairment of the Collateral Property in addition to broad waivers of "any and all defenses." As a result, the Court can discern no reason why Mr. Odom's alleged actions could give rise to an affirmative defense not already waived by Defendants.

Defendants' argument that enforcement of the waivers is somehow against public policy is equally unpersuasive. " 'It is well settled that contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears.' " Colonial Props. Realty Ltd. P'ship v. Lowder Constr. Co., 256 Ga. App. 106, 111, 567 S.E.2d 389, 393 (2002) (quoting Emory Univ. v. Porubiansky, 248 Ga. 391, 393, 282 S.E.2d 903, 904 (1981)). Here, Defendants state that the waivers allow Plaintiff to harm Defendants financial interests without facing repercussions. (Doc. 32 at 7.) According to Defendants,

enforcing such a one-sided deal is against public policy. Id.

The Court, however, disagrees. Defendants do not provide, and the Court cannot find, any authority to suggest that the parties' agreements violate public policy based merely on Defendants' belief that they made a bad business deal. Quite simply, the Court can discern no reason why the clear and unambiguous terms of the guaranties should not be enforced. Accordingly, summary judgment in Plaintiff's favor is appropriate with regard to Defendants' liability pursuant to the guaranties.

## III. DEFENDANTS' COUNTERCLAIMS

In their answer to the complaint, Defendants have additionally brought ten counterclaims against Plaintiff: breach of fiduciary duties, negligence, breach of contract, breach of the covenant of good faith and fair dealing, breach of duty to guarantors, economic duress, fraud, tortious interference with contractual relations, tortious interference with business relations, and defamation. (Doc. 10.) As discussed above, however, Defendants have waived "any and all defenses, claims and discharges of [SBI], or any other obligor, pertaining to the [i]ndebtedness, except the defense of discharge by payment in full." (Doc. 24, Attach. 1 at 29, 32.) While Defendants' counterclaims are

not pled with great particularity, each appears to either directly or derivatively hinge on Plaintiff's, or its predecessor's, actions related to the loan. As a result, the broad scope of the guaranties effectively bars Defendants' counterclaims in the same manner as the affirmative defenses discussed above.

A. <u>Breach of Fiduciary Duty, Breach of Duty to Guarantors, and Negligence</u>

Even if the guaranties do not preclude Defendants' counterclaims, however, the Court finds each of them wholly without merit. First, Defendants' breach of fiduciary duty, negligence,[6] and breach of duty to guarantor claims all allege that Plaintiff owed a confidential or fiduciary duty to Defendants and that Plaintiff breach this duty by holding its own interests ahead of those of SBI and Defendants. (Doc. 10 at 9-11, 14-15.) However, "in general

---

[6] Defendants plead their negligence claim with particularly convoluted reasoning. While negligence does not normally carry a requirement of a fiduciary duty, Defendants nonetheless base their negligence claim on the allegation that Plaintiff owed "a duty not to put its own interests above those of [Defendants.]" (Doc. 10 at 10.) Defendants also maintain that Plaintiff was negligent in failing to disclose an updated appraisal of the Collateral Property indicating that it had lost value. <u>Id.</u> However, "a bank has no duty to advise a party who is contemplating serving as the guarantor for a bank loan about problems with the viability of the business venture financed by the loan." <u>Lilliston v. Regions Bank</u>, 288 Ga. App. 241, 244, 653 S.E.2d 306, 310 (2007). Accordingly, Defendants negligence claim is without merit.

there is no fiduciary relationship between a borrower and a lender." Gwinnett Cmty. Bank v. Arlington Capital, LLC, 326 Ga. App. 710, 716, 757 S.E.2d 239, 245 (2014). Defendants insist that a fiduciary relationship exists because Mr. Odom violated the Defendants' trust by revealing information concerning the financial condition of SBI to third-parties. (Doc. 32 at 9.) Even if such were the case, however, the mere fact that Defendants trusted Plaintiff does not establish a fiduciary relationship. See Trulove v. Woodmen of World Life Ins. Soc'y, 204 Ga. App. 362, 365, 419 S.E.2d 324, 328 (1992) ("The mere fact that one reposes trust and confidence in another does not create a confidential relationship."). Because Defendants have offered no reasonable argument as to why the general rule should be ignored in this case, their claims relying on the existence of a fiduciary relationship between the parties must fail.

B. Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Tortious Interference with Contractual Relations, and Tortious Interference with Business Relations

Next, Defendants' breach of contract, breach of covenant of good faith and fair dealing, tortious interference with contractual relations, and tortious interference with business relations are all based on

either Plaintiff's dealings with SBI with regard to the loan obligations or some unspecified dealings between SBI and the Ford Plantation Club. (Doc. 10 at 11-13, 18-20.) However, Defendants make no allegations that they were ever parties to any of these dealings as individuals. As such, Defendants do not appear to have standing to bring these claims. Nevertheless, Defendants insist that they have a right to bring suit as third-party beneficiaries. Id.

Intent to create a third-party beneficiary must be shown in the contract: "In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." Miree v. United States, 242 Ga. 126, 135, 249 S.E.2d 573, 579 (1978) (citations omitted). "Unless such an intention is shown on the face of the contract, defendant is under no duty and consequently plaintiff acquires no right as the third party beneficiary." Plantation Pipe Line Co. v. 3-D Excavators, 160 Ga. App. 756, 757, 287 S.E.2d 102, 103-04 (1981). A contract is intended to benefit a third party when the promisor engages to the promisee to render some performance to a third person. Starrett v. Commercial Bank of Ga., 226 Ga. App. 598, 599, 486 S.E.2d 923, 925 (1997).

Here, Defendants have identified no contract or agreement between SBI and the Ford Plantation Club that could afford Defendants third-party beneficiary status. Furthermore, Defendants have pointed to nothing in the loan contract between Plaintiff and SBI that suggests Defendants were intended as third-party beneficiaries thereof. Rather, Defendants merely conclude that they enjoy third-party beneficiary status because they are "members of SBI and guarantors of the SBI Loan." (Doc. 32 at 11.) Defendants do not provide, and the Court cannot find, any legal authority suggesting that this should afford them third-party beneficiary status or otherwise allow Defendants to bring suit to enforce SBI's rights in any regard. Indeed, Georgia courts have held that loan guarantors are not generally "third-party beneficiaries" despite potentially benefitting from the loan in question. See, e.g., Light v. Equitable Mortg. Res., Inc., 191 Ga. App. 816, 383 S.E.2d 142 (1989) (loan guarantors not third-party beneficiaries of agreement between borrower and lender despite guarantors' financial interest in underlying venture funded by loan). Even if Defendants participated in any of the aforementioned dealings, the record is clear that they acted on SBI's behalf. Accordingly, each of these counterclaims must fail.

C. Defamation and Economic Duress

Defendants' defamation and economic duress claims rely—at least in part—on alleged statements by Plaintiff or its representatives. Specifically, Defendants allege that economic duress occurred in this case because Ameris Bank threatened SBI with default if SBI did not execute a renewal of the loan in 2011. (Doc. 10 at 15.) As for defamation, Defendants allege that Mr. Odom publicly made "slanderous statements about SBI and its members' financial stability" that harmed Defendants. (Doc. 32 at 18.)

In both cases, however, Defendants can point to no admissible evidence to establish their allegations. "The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.' " Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that affidavits in support or opposition of motions for summary judgment "must be made on personal knowledge [and] set out facts that would be admissible in evidence." Furthermore, statements in an affidavit may not contradict sworn testimony simply for the purpose of creating a material issue of fact and defeating summary

judgment. Huddleston v. R.J. Reynolds Tobacco Co., 66 F. Supp. 2d 1370, 1372-73 (N.D. Ga. 1999).

In support of its assertion that SBI was threatened with default before renewing the loan, Defendants rely on Defendant Martin's affidavit stating that such act occurred. (Doc. 33 at 12.) However, Defendants admit that the renewal of the loan was handled exclusively by Mr. Srikanthan and that Defendant Martin never dealt with the bank in regard to the loan's renewal. (Doc. 33 ¶ 3.) Defendants offer no evidence to substantiate Defendant Martin's claim or indicate how he is making this statement based on personal knowledge. For his part, Mr. Srikanthan has stated that SBI was not threatened with default if the loan was not renewed. (Doc. 24, Attach. 3 ¶ 15.) As a result, the Court finds that Defendant Martin's statement is not made upon personal knowledge and fails to create a genuine issue of material fact to support Defendants' claim of economic duress.

With regard to their defamation claim, Defendants contend that Mr. Odom made untruthful statements regarding SBI and its members' confidential financial information at informal breakfast meetings of the Ford Plantation Club. (Doc. 32 at 18-19.) As with Defendants' claim that they were threatened with default if the loan was not renewed,

Defendants rely exclusively on Defendant Martin's conclusory statements in his affidavit to support this allegation. Once again, however, it appears plainly obvious that Defendant Martin is not offering a statement based on personal knowledge, but is merely proclaiming an unsubstantiated rumor as fact in an effort to avoid summary judgment. Defendant Martin admitted in his deposition that he was not a part of any of these breakfast meetings and that his knowledge of their contents is based purely on hearsay. (Doc. 24, Attach. 4 at 61 ("As far as being a party to the conversations [with Mr. Odom], we were not a party to it, but it was reported back to us from people that were participating in the discussion what was said.").)

Quite simply, the Court can discern no reason to give any credence whatsoever to Defendant Martin's statements in support of Defendants' defamation counterclaim. Defendants failed to offer any admissible evidence indicating the contents of Mr. Odom's statements with any specificity, how they were defamatory, or even that they actually occurred. In addition, Mr. Odom has provided unrebutted testimony that he never revealed confidential information in these meetings. (Doc. 24, Attach. 9 ¶¶ 11-12.) As a result, Defendants' claim for defamation is not supported by any

admissible evidence and Plaintiff is entitled to summary judgment on this issue.[7]

D. Fraud

Finally, the Court addresses Defendants' claim of fraud. Specifically, Defendants argue that Plaintiff knew the Collateral Property had depreciated in value, yet failed to advise Defendants of this fact. (Doc. 32 at 14.) Even if such is the case, however, the Court finds this allegation wholly insufficient to sustain a cause of action for fraud.

To establish fraud, the alleging party must show the following: (1) a false representation; (2) scienter; (3) intention to induce the party to act or refrain from acting; (4) justifiable reliance; and (5) damages. Sewell v. Cancel, 331 Ga. App. 687, 694, 771 S.E.2d 388, 394 (2015). However, "generally, there can be no fraud without an express misrepresentation." Miller v. Lomax, 266 Ga. App. 93, 96, 596 S.E.2d 232, 237 (2004). "A party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the

_____

[7] Defendants also suggest that Mr. Odom's offer to sell the Collateral Property can form the basis of a defamatory action. (Doc. 32 at 18.) However, the Court fails to understand, and Defendants do not explain, how an offer to sell the Collateral Property could somehow constitute a defamatory statement about Defendants. Accordingly, the Court need not further address this allegation.

fact." <u>Lilliston v. Regions Bank</u>, 288 Ga. App. 241, 244, 653 S.E.2d 306, 310 (2007).

Here, the Court finds that the bank's silence as to the value of the Collateral property cannot constitute a false representation. As stated before, Plaintiff had no fiduciary or confidential relationship with Defendants such that Plaintiff was required to provide an updated appraisal of the Collateral Property when the loan was renewed. <u>See, e.g.</u>, <u>First Union Nat'l Bank of Ga. v. Gurley</u>, 208 Ga. App. 647, 648, 431 S.E.2d 379, 381 (1993) ("[A] bank owes no legal duty to act as a customer's legal or financial advisor."). Because Plaintiff had no duty to provide Defendants with this information, failure to do so cannot form the basis for a fraud claim. As a result, the Court finds Defendants' fraud claim wholly unsustainable. <u>See Lilliston</u>, 288 Ga. App. at 244, 653 S.E.2d at 310.

### CONCLUSION

For the foregoing reasons, Defendants Motion to Stay (Doc. 27) is **DENIED** and Plaintiff's Motion for Summary Judgment (Doc. 23) is **GRANTED**. Defendants have failed to show any genuine issue of material fact to sustain their counterclaims or defeat Plaintiff's claim for payment pursuant to the loan guaranties. Accordingly, Plaintiff is **DIRECTED** to file, within thirty days, an affidavit

outlining the total amount, costs, and any accrued interest to which Plaintiff believes it is entitled. Defendants shall have twenty days to respond.

SO ORDERED this 7th day of September 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA